UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 20-00309 JVS (JDEx) | Date | 4/22/20 |
|---|---|---|---|
| Title | Marty Linebarger v. Graphic Packaging International, LLC | | |

| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**    **[IN CHAMBERS]** Order Regarding Motion for Remand

    Defendant Graphic Packaging International, LLC ("GPI") moves to remand this action to the Superior Court for the State of California, County of Orange. Mot., ECF No. 13. Plaintiff Marty Linebarger ("Linebarger") opposes the motion. Opp'n, ECF No. 14. GPI replied. Reply, ECF No. 21. GPI filed a sur-reply. GSR, ECF No. 24. Linebarger responded to the sur-reply. LSR, ECF No. 25.

    For the following reasons, the Court **DENIES** the motion.

## I. BACKGROUND

    Linebarger filed his complaint in the Superior Court for the State of California, County of Orange (Case No. 30-2020-01122257-CU-OE-CJC) on January 6, 2020. Compl., ECF No. 1 (pg. 27-32). The complaint alleges one cause of action for penalties pursuant to California Labor Code § 2699(f), *et. seq.*, known as the Labor Code Private Attorney General Act of 2004 ("PAGA"), on behalf of all aggrieved employees. Id. at ¶¶ 10-14. The complaint alleges the following.

    Linebarger was employed by GPI from October 2018 through February 2019 as a non-exempt employee. Id. at ¶ 5. For at least one year prior to the date, Linebarger "began the process of exhausting administrative requirements" with respect to his claim that GPI consistently had policies that violated PAGA. Id. at ¶ 2. Such violations include the following. GPI failed to pay all minimum and overtime wages earned and required employees to work off-the-clock, including attending meetings and cleaning tools. Id. at ¶ 2(a). GPI failed to pay premium wages to employees who were denied rest periods even though employees were routinely not authorized to take rest periods. Id. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-00309 JVS (JDEx) | Date | 4/22/20 |
|---|---|---|---|
| Title | Marty Linebarger v. Graphic Packaging International, LLC | | |

¶ 2(b). When rest periods were provided, employees were not permitted to leave the premises and were required to carry two-way radios and be alert for and respond to calls. Id. GPI also failed to pay premium wages to those employees who were denied proper meal periods, and when meal periods were provided they were also required to carry a two-way radio to respond to calls. Id. at ¶ 2(c). Linebarger and other aggrieved employees were also required to use their own cell phones and computers for work tasks without being fully reimbursed. Id. at ¶ 2(d). GPI did not provide employees with accurate wage statements. Id. at ¶ 2(e). Linebarger and the aggrieved employees were not paid all wages due during the course of their employment and were not timely paid all wages at the separation of their employment. Id. at ¶ 2(f).

On February 14, 2020, GPI removed the action to this Court on the grounds of federal question jurisdiction, and alternatively, diversity jurisdiction. See generally, Removal, ECF No. 1.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from state court to federal court if the parties could have originally filed the case in federal court. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 163, (1997). Where removal is based on diversity, (1) the citizenship of the plaintiff must differ from the citizenship of all defendants and (2) the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). District courts have diversity jurisdiction over "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). District courts, however "shall not have original jurisdiction under [section 1332(a)(2)] of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." Id. (emphasis added).

The Ninth Circuit has directed courts to "strictly construe the removal statute against removal jurisdiction," so that any doubt as to the right of removal is resolved in favor of remanding the case to state court." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). Thus, the removing party bears the burden to demonstrate that removal was proper. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988).

## III. DISCUSSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-00309 JVS (JDEx) | Date | 4/22/20 |
|---|---|---|---|

| Title | Marty Linebarger v. Graphic Packaging International, LLC |
|---|---|

Linebarger moves to remand this action to state court and seeks reimbursement for attorneys' fees in filing his motion on the grounds that the notice of removal failed to demonstrate that federal question jurisdiction exists, and that the removal failed to demonstrate that the amount in controversy exceeded $75,000 and therefore, the Court also lacks diversity jurisdiction. See generally, Mot. The Court addresses each argument in turn.

### A. Diversity Jurisdiction

Here, GPI alleges, and Linebarger does not contest, that Linebarger and GPI are citizens of different states. See Removal ¶¶ 18-24. However, Linebarger argues that GPI has not shown that the amount in controversy exceeds $75.000.

Linebarger did not allege an amount in controversy in his complaint. Thus, under the preponderance of the evidence standard applicable here, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

Linebarger's only cause of action is under the PAGA, which permits plaintiffs to bring representative claims against his or her employer "on behalf of himself or herself and other current or former employees" for alleged violations of the California Labor Code if the Labor & Workforce Development Agency ("LWDA") declines to investigate or issue a citation. Cal Labor Code § 2698, et seq.; see also Urbino v. Orkin Servs. of Cal., Inc., 726 F.3d 1118, 1121 (9th Cir.2013). "If the representative plaintiff prevails, the aggrieved employees are statutorily entitled to 25% of the civil penalties recovered while the LWDA is entitled to 75%." Id. (citing Cal. Labor Code § 2699(I)). However, "penalties recoverable on behalf of all aggrieved employees" may not be aggregated to meet the amount in controversy requirement. Id. at 1120, 1122-23. Although aggrieved employees have "a host of claims" available to them, Urbino reasoned that "these rights are held individually" and thus a defendant's "obligation to them is not as a group, but as individuals severally." Id. at 1122 (internal quotation marks and citation omitted). In response to the defendants' argument that a PAGA plaintiff asserts the "state's collective interest in enforcing its labor laws through PAGA," Urbino concluded that "[t]o the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-00309 JVS (JDEx) | Date | 4/22/20 |
|---|---|---|---|
| Title | Marty Linebarger v. Graphic Packaging International, LLC | | |

extent Plaintiff can—and does—assert anything but his individual interest ... [t]he state, as the real party in interest, is not a 'citizen' for diversity purposes." Id. at 1122–23.

 Urbino did not address whether the civil penalties recovered by the LWDA should count for purposes of meeting the amount in controversy requirement. However, in looking at the decision in Urbino and the subsequent decision by the California Supreme Court in Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal. 4th 348 (2014), district courts in this circuit are split as to whether the amount awarded to the state should be considered. Some courts have found that the "75% awarded to the state is not considered to be an amount in controversy for jurisdictional purposes." Lopez v. Source Interlink Companies, Inc., 2012 WL 1131543, at *3 (E.D. Cal. Mar. 29, 2012); see also Lopez v. Ace Cash Exp., Inc., 2015 WL 1383535, at *5 (C.D. Cal. Mar. 24, 2015). Others have aggregated the LWDA's pro rata share and the representative plaintiff's pro rata share to calculate the amount in controversy. See Patel v. Nike Retail Servs., Inc., 58 F. Supp. 3d 1032, 1044-48 (N.D. Cal. 2014); Mitchell v. Grubhub Inc., 2015 WL 5096420, at *6 (C.D. Cal. Aug. 28, 2015). However, it appears that the "weight of opinion is that only 25% of the civil penalties sought in a PAGA action, the amount that accrues to employees rather than the LWDA, should be counted toward the amount in controversy." Prestwood v. Marriott Ownership Resorts, Inc., 2019 WL 2522674, at *3 (C.D. Cal. June 18, 2019) (collecting additional cases). The Court continues to agree with the reasoning in these cases and finds that only the 25% of civil penalties that Linebarger would individually be entitled to should be considered for the amount in controversy requirement. See Esqueda v. Sonic Auto., Inc., 2015 WL 1821022, at *5 (C.D. Cal. Apr. 22, 2015, J. Selna).

 Here, that amounts to only $5,462.50. Linebarger seeks penalties for violations of Labor Code §§ 201, 202, 226(a), 226.7, 510, 512, 1194, and 2802. Compl., ¶ 12. PAGA provides for civil penalties for each Labor Code violation in the amount specifically provided by the violated statute, or "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation" if no amount is specified in the violated statute. Cal. Lab. Code § 2699(f)(2). "Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to

Case 8:20-cv-00309-JVS-JDE   Document 29   Filed 04/22/20   Page 5 of 11   Page ID #:449

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-00309 JVS (JDEx) | Date | 4/22/20 |
|---|---|---|---|
| Title | Marty Linebarger v. Graphic Packaging International, LLC | | |

keep the records required in subdivision (a) of Section 226." Cal. Lab. Code § 226.3. Thus, for the initial violation, Linebarger would be entitled to $262.50 (calculated at $25 x 8 for initial violation of §§ 201, 202, 226(a), 226.7, 510, 512, 1194, and 2802 plus $62.50 for the penalty provided at §226.3). For each subsequent violation Linebarger would be entitled to $650 (calculated at $50 x 8 for subsequent violations of §§ 201, 202, 226(a), 226.7, 510, 512, 1194, and 2802 plus $250 for the penalty provided at §226.3). Thus, Linebarger's 25% individual share of penalties account for $5,462.50 assuming a violation occurred for each of his nine pay periods. See Removal, ¶ 34.

GPI has also added attorneys fees in its calculation of the amount in controversy. GPI determines that using a lodestar analysis attorneys' fees could be $10 million and utilizing a percentage of fund calculation fees could exceed $20.85 million. See Removal, ¶ 35. However, because PAGA attorney's fees are allowed to any employee who prevails in an action, and not just the party that brought the action, total possible attorneys fees are not properly allocated towards the amount in controversy requirement. See Garrett v. Bank of Am., N.A., 2014 WL 1648759, at *9 (N.D. Cal. Apr. 24, 2014); Cal. Lab. Code § 2699(g)(1); Millar v. Bank of Am., N.A., 2015 WL 5698744, at *5 (N.D. Cal. Sept. 29, 2015); Patel, 58 F. Supp. 3d at 1049 ("[O]nly the portion of attorney's fees attributable to [the named plaintiff's] claims count towards the amount in controversy."). Here, there are 800 potential aggrieved employees. Amelia Hoke ("Hoke") Decl., ¶ 6, ECF No. 1-2. Thus, utilizing these two methods of calculations, Linebarger's individual attorneys fees could be between $12,500 to $26,062.50. GPI also offers citations to other cases where fees of $73,680 and $147,610 in attorneys fees and costs were awarded to single-plaintiff wage and hour cases. See Removal, ¶ 35(c). The Court finds these figures nonequivalent estimations of fees for this case because they do not reflect cases where only PAGA penalties were sought for all aggrieved employees, and thereby fees would be apportioned among all aggrieved employees. Thus, adding estimates for individual attorneys fees and individual penalties, the amount in controversy is only at most $31,525.

GPI also adds to Linebarger's individual damage calculation waiting time penalties (approximately $11,405.01), unpaid premium wages ($14,250.00), and unpaid business expenses ($225.00). See Removal, ¶ 34. Linebarger argues that it is inappropriate to include these amounts because they are not part of the action since Linebarger only seeks PAGA penalties, and not unpaid wages or other damages. Mot., 21. The Court agrees with Linebarger's argument since the Complaint only seeks PAGA penalties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-00309 JVS (JDEx) | Date | 4/22/20 |
|---|---|---|---|
| Title | Marty Linebarger v. Graphic Packaging International, LLC | | |

Nonetheless, the Court notes that even if these amounts were included in the controversy calculation, the total would still be well below the $75,000 threshold.

As such, the Court finds that GPI has failed to establish its burden that by a preponderance of the evidence, the amount in controversy more than likely exceeds $75,000. Accordingly, the Court does not have diversity jurisdiction over this matter.

### B.  Federal Question Jurisdiction

GPI argues that Linebarger's claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), because resolution of his claims will require interpretation of the collective bargaining agreement ("CBA") in place during the relevant time period. Opp'n, 15-18, Removal, ¶ 11.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1106 (9th Cir. 2000). However, pursuant to the "complete preemption" doctrine, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987). The complete preemption doctrine is "a narrow exception" to the well-pleaded complaint rule and only applies in "a handful of 'extraordinary' situations where even a well-pleaded state law complaint will be deemed to arise under federal law for jurisdictional purposes." Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 (9th Cir. 1993). "The complete preemption doctrine is sometimes implicated in cases raising claims preempted by § 301 of the LMRA." Castillo v. Long Beach Mem'l Med. Ctr., 132 F. Supp. 3d 1194, 1198 (C.D. Cal. 2015) (internal citations omitted).

Section 301(a) of the LMRA gives federal courts jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a); see also Franchise Tax Bd. of State of Cal. v. Const. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 23 (1983). Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of [CBAs], and thus to promote the peaceable,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-00309 JVS (JDEx) | Date | 4/22/20 |
|---|---|---|---|
| Title | Marty Linebarger v. Graphic Packaging International, LLC | | |

consistent resolution of labor-management disputes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988).

Courts have applied the preemptive effect of § 301 beyond suits alleging the violation of a collective bargaining agreement in order to further the goal of uniform interpretation of labor contracts. See, e.g, Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 210–11 (1985). Therefore, courts find that a state law claim is preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require judicial interpretation of those terms. Id. at 213 (finding that § 301 preempted a claim for breach of the duty of good faith and fair dealing because the court needed to assess "good faith" and "fair dealing" in relation to the contractual obligations).

However, § 301 does not preempt a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract . . . ." Id. Thus, if a contract cannot waive or alter a state law, and if the rights the state law creates can be enforced without considering the contract's terms, § 301 does not preempt the claim. See Miller v. AT & T Network Systems, 850 F.2d 543, 546 (9th Cir. 1988). "If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001) (en banc), cert. denied, 534 U.S. 1078 (2002).

In addition, a defendant cannot invoke preemption by only alleging a "hypothetical connection between the claim and the terms of the CBA," or a "creative linkage" between the subject matter of the suit and the wording of the CBA. Id. at 691–92. To prevail, "the proffered interpretation argument must reach a reasonable level of credibility." Id. at 692. A preemption argument is not credible "simply because the court may have to consult the CBA to evaluate [a plaintiff's claim]; [similarly,] 'look[ing] to' the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption." Id. (quoting Livadas v. Bradshaw, 512 U.S. 107, 125 (1994)).

In Cramer, the Ninth Circuit clarified the scope of the LMRA's preemptive effect:

> To the extent our prior cases held or implied that preemption was proper because of the mere possibility that the subject matter of the claim was a proper subject of the collective bargaining process, whether or not specifically discussed in the CBA, we

Case 8:20-cv-00309-JVS-JDE   Document 29   Filed 04/22/20   Page 8 of 11   Page ID #:452

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-00309 JVS (JDEx) | Date | 4/22/20 |
|---|---|---|---|
| Title | Marty Linebarger v. Graphic Packaging International, LLC | | |

today hold such statements to be an incorrect articulation of § 301 preemption principles. <u>A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute.</u>

<u>Id.</u> at 693 (emphasis supplied); <u>see also</u> <u>Humble v. Boeing Co.</u>, 305 F.3d 1004, 1007–08 (9th Cir. 2002) (stating that <u>Cramer</u> "revised [the] framework for analyzing § 301 preemption and synthesized the considerations involved").

To determine whether a cause of action is preempted by the LMRA, courts use a two-part test established by the Ninth Circuit. <u>Burnside v. Kiewit Pac. Corp.</u>, 491 F.3d 1053, 1059 (9th Cir. 2007). First, a court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and . . . [the] analysis ends . . . ." However, if "the right exists independently of the CBA, [a court] must still consider whether it is nevertheless substantially dependent on analysis of a collective-bargaining agreement. If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." <u>Id.</u> at 1059–60 (internal quotations and citations omitted).

Here, Plaintiff's PAGA penalties sought in connection with alleged unpaid overtime are preempted under the first part of the <u>Burnside</u> test because the facility where Linebarger worked has during the relevant periods had an alternative arrangement adopted pursuant to a CBA in place. <u>See</u> 2d Hoke Decl., ECF 14-1, ¶ 5, Ex. A. While Section 510 of the California Labor Code is California's "default rule for overtime," the requirements of Section 510 do no apply where the employee is working pursuant to an alternative workweek schedule adopted pursuant to a CBA pursuant to Section 514. Cal. Lab. Code §§ 510-511; <u>Curtis</u>, 913 F.3d at 1153. Section 514 states that Sections 510 and 511 "do not apply to an employee covered by a valid [CBA] if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. Here, the CBA specifically

Case 8:20-cv-00309-JVS-JDE   Document 29   Filed 04/22/20   Page 9 of 11   Page ID #:453

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-00309 JVS (JDEx)                                    Date   4/22/20

Title   Marty Linebarger v. Graphic Packaging International, LLC

provides for working conditions, wage rates, and overtime hours worked, including specific provisions for when the facility is in "continuous production." Id. at Ex. A. Additionally, employees subject to the CBA worked at a regular hourly rate of pay of not less than 30 percent more than the minimum wage. See 2d Hoke Decl., Ex. A cf. RJN, ¶ 1, ECF No. 14-3. Therefore, the overtime wage claims arise from the CBA, and necessarily require the Court to interpret existing provisions of the CBA.

In his reply, Linebarger acknowledges that his overtime related claims are pre-empted by Section 301. Reply, 9. Nonetheless, Linebarger requests that the Court dismiss the claim without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). Id. However, the Ninth Circuit has "long held that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." Williams v. Costco Wholesale Corp., 471 F.3d 975, 976 (9th Cir. 2006). As such, the Court has federal question jurisdiction over the overtime based PAGA penalties claims.

GPI argues that the meal claims are also preempted pursuant to Section 301 because they arise solely from the CBA. Opp'n 16. The CBA does discuss meal periods and pay for meals when employees are required to work a certain number of hours. See e.g., 2d Hoke Decl., Ex. A, 8.1. Linebarger argues in his reply that the CBA is silent as to the default meal break policies and only addresses the alternative meal break policy. Reply, 3-4. Linebarger asserts that Defendants present no evidence on whether the policy was ever invoked during the relevant time period. With its sur-reply, GPI filed a declaration supporting the fact that Linebarger was hired on October 12, 2018 and moved to "continuous operations" and remained working under those conditions until he was terminated. 3d Hoke Decl., ¶¶ 3-5, ECF No. 24-1. However, the stipulation and order granting leave to file sur-replies, limited the scope of GPI's sur-reply to the issue of the effects of post-removal amendments. See ECF Nos., 22, 23. Thus, this declaration and arguments outside of the scope permitted by the Court were impermissibly filed without leave. Nonetheless, the Court notes that Linebarger has had the opportunity to respond to the facts asserted in the declaration in his response to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-00309 JVS (JDEx) | Date | 4/22/20 |
|---|---|---|---|
| Title | Marty Linebarger v. Graphic Packaging International, LLC | | |

sur-reply, and does not contest its accuracy. See GSR, 3.[1] Thus, the PAGA related meal claims are preempted pursuant to Section 301 because they necessarily require the Court to interpret existing provisions of the CBA.[2]

As to the remaining claims arising from allegations that GPI failed to provide rest periods and reimburse business expenses, GPI argues that they will require substantial analysis of the CBA as set forth in the second prong of the Burnside test. Opp'n, 17. As to the rest periods, GPI argues that the Court will have to interpret Exhibit B of the CBA to determine whether GPI's unilateral right to alter when breaks taken during "continuous operations" violates IWC Wage Order 4-2001, Section 12. Id. As to the reimbursements, GPI argues that the Court will have to determine if Section 38 of the CBA, titled "Allowances" and allowing a shoe and maintenance tool allowance, is adequate to cover the expenses plaintiff claims. Id. at 17-18. Linebarger argues that the CBA is silent as to rest break policy and that such a policy is based entirely on and is consistent with the California Labor Code. Reply, 3. Furthermore, Linebarger argues that the rest break claims and expense reimbursement claims are based on rights conferred by California law and exist independent of the CBA. Id. at 4.

Here, unlike in Lopez v. Sysco Corp., 2016 WL 3078840, at *5 (N.D. Cal. Jan. 25, 2016), GPI has done more than just made reference to portions of the CBA and made conclusory statements that "they must be interpreted without any explanation as to why that is the case." GPI has made valid arguments that the cell phone expenses could be considered necessary maintenance tool under the CBA. Thus, for these claims, the Court finds that GPI has met their burden under the second prong of the Burnside test because the claims are substantially dependent on analysis of the CBA.

---

[1] Additionally, the Court finds it inconsistent that Linebarger acknowledges that the overtime related claims (arising from the same time period and in part from "continuous production" period addressed in the CBA), are preempted by Section 301, while arguing that the meal break related claims are not.

[2] Furthermore, the Court notes that it would have at a minimum asserted supplemental jurisdiction over these claims regardless of whether the declaration had been filed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-00309 JVS (JDEx) | Date | 4/22/20 |
|---|---|---|---|
| Title | Marty Linebarger v. Graphic Packaging International, LLC | | |

    However, as to the rest periods, GPI has done no more than make a conclusory allegation that the Court will have to interpret whether their right to alter when breaks are taken under the CBA violates the relevant wage order without showing that this is actually in dispute.  Nonetheless, the Court finds that supplemental jurisdiction is appropriate because the claims are derived from a common nucleus of operative facts – the way in which GPI paid Linebarger during his employment.  <u>See</u> 28 U.S.C. § 1367(a); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966).  Furthermore, the evidence and witnesses presented for the claims will have substantial overlap.

    Having found that federal question jurisdiction exists as to the overtime, meal, and business expense related claims and exercising supplemental jurisdiction over the remaining claims, the Court **DENIES** Linebarger's motion to remand.

### IV.  CONCLUSION

    For the foregoing reasons, the Court **DENIES** the motion.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |